UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KIAZA LOCENITT,

                    Plaintiff,

-against-


DAVID S. DINELLO, et al.,

                    Defendants.

No. 23-CV-3399 (LAP)

OPINION AND ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the motion to dismiss Plaintiff Kiaza Locenitt's Complaint, (see dkt. no. 1 ["Complaint" or "Compl."]), filed by Defendant Kristin Salotti. (See dkt. no. 66 [the "Motion to Dismiss"].)[1]  For the reasons set forth below, the Court grants Salotti's Motion to Dismiss.

I.  **Background**

A. Factual Background

**1. The Parties and Plaintiff's Medical Treatment History**

Plaintiff is an inmate who was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") as early as 2009 and, after a release, re-entered DOCCS

---

[1] In docket entry number 66, Defendant David Dinello also moved to dismiss Plaintiff's Complaint, but only on grounds related to Plaintiff's purported failure to exhaust his administrative remedies and satisfy the statute of limitations. (See dkt. no. 67 at 4-7.)  However, because the Court has already denied as premature all motions to dismiss based on statute of limitations or exhaustion grounds, (see dkt. no. 86), Dinello's arguments in the motion to dismiss are moot and no longer sub judice.

custody in 2013.  (See Compl. ¶¶ 5, 297-98, 339.)  He suffers from chronic pain in his lower back, hip, and left knee, as well as chronic migraines, seizure disorder, degenerative joint disease, and mental health issues.  (See id. ¶ 5.)

Defendants are physicians or other medical providers who worked in various capacities for DOCCS at all times relevant to the instant Motion to Dismiss.  (See id. ¶¶ 11-27.)  As is particularly relevant here, Plaintiff identifies Defendant Kristin Salotti as a "Mid-Level clinician" who treated him briefly at DOCCS's Five Points Correctional Facility ("Five Points") when he was housed there between January and April 2018.  (See id. ¶¶ 27, 323-25.)

When Plaintiff re-entered DOCCS custody in 2013, he was housed at Wende Correctional Facility ("Wende") before being transferred to Five Points in May 2014.  (See id. ¶¶ 299-300.)  At both facilities, medical providers addressed Plaintiff's complaints of chronic pain by providing him ibuprofen.  (See id.)  In January 2015, shortly after DOCCS transferred Plaintiff to Sullivan Correctional Facility, medical providers began to treat Plaintiff's pain with Neurontin, an anticonvulsant often prescribed to relieve nerve pain and neuropathy.  (See id. ¶¶ 94, 300-01.)  Defendant continued to use Neurontin until February 2016, when Defendant Jacqueline Levitt began to taper Plaintiff off the medication based on "inadequate [symptoms] to continue [its] use."

(See id. ¶¶ 305-06.)  When Plaintiff began to complain and asked his provider to reinstate a full dose of Neurontin, Levitt refused. (See id. ¶ 307.)  As DOCCS transferred him between and among multiple facilities over the next few months, Plaintiff continued to complain about pain and to request reinstatement of his previous Neurontin dosage, which complaints and requests were met with prescriptions for Indocin.  (See id. ¶¶ 311-18.)

In April 2017, Defendant Shehab Zaki, a medical provider at the Marcy Correctional Facility where Plaintiff was housed at the time, re-prescribed Plaintiff 300mg of Neurontin and referred him to physical therapy.  (See id. ¶ 319.)  However, when Plaintiff was transferred back to Wende one month later, his medical providers there discontinued his Neurontin prescription when they accused him of diverting the medication following an incident during which he placed his Neurontin pill on the floor after he received it.  (See id. ¶ 320.)  In July 2017, Plaintiff requested to be re-prescribed Neurontin for his back pain, but the nurse at Wende wrote in a contemporaneous note that Plaintiff would not receive a new prescription.  (See id. ¶ 321.)

Plaintiff was then transferred back to Five Points in 2018, at which time he was only taking ibuprofen to treat his pain.  (See id. ¶ 323.)  Defendant Kristin Salotti, a clinician with DOCCS at Five Points, treated Plaintiff's pain with Topamax, which Plaintiff says did not treat his pain.  (See id.)  Plaintiff does

not state whether he specifically requested from Salotti any particular medication.

Plaintiff was transferred several more times in the following three years, during which time he continued to complain to several defendants about his chronic pain and to request Neurontin to treat his pain, which requests were denied each time by several different defendants.  (See id. ¶¶ 326-29, 331-32, 334.)  The various defendant medical providers at the facilities at which Plaintiff was housed at this time mostly treated Plaintiff's general pain with ibuprofen and Celebrex and treated his headaches with Topamax, Excedrin, and Propranolol.  (See id. ¶¶ 325, 333, 335-36.)

### 2. The MWAP Policy

On June 2, 2017, DOCCS Chief Medical Officer Allen Koenigsmann promulgated the Medications With Abuse Potential ("MWAP") Policy. (See id. ¶¶ 11, 151-52.)  Pursuant to the MWAP Policy, any medical provider at a DOCCS facility—including physicians treating inmates—seeking to prescribe for an inmate any "controlled substance[]" or "medication[] that ha[s] significant abuse potential" would have to submit an MWAP Request Form to the DOCCS regional medical director in charge of overseeing medical treatment at the provider's particular DOCCS facility.  (See id. ¶¶ 161-65.)  The medical provider at the particular DOCCS facility would have to include in the MWAP Request the patient's health information, the justification for using the particular

4

medication, a list of alternatives the provider had attempted to treat the medical issue, and any recent evidence of the patient's drug diversion or abuse. (See id. ¶¶ 166-67.) After receiving the medical provider's MWAP Request to prescribe a particular medication, the regional medical director in charge of the provider's facility would either approve or deny the proposed prescription. (See id. ¶ 170.)

B. Procedural History

The instant case is related to a class action lawsuit brought by several DOCCS inmates on behalf of a class of individuals in DOCCS custody whose medications were denied or discontinued after the institution of the MWAP Policy. (See Allen v. Koenigsmann, 19-cv-8173 ["Allen I"], dkt. no. 371 at 7.) On March 31, 2023, this Court issued an opinion granting the Allen I plaintiffs' motion to certify a class to pursue injunctive relief but denying the plaintiffs' motion to certify a class to pursue damages for liability. See Allen I, No. 19-cv-8173 (LAP), 2023 WL 2731733, at *6 (S.D.N.Y. Mar. 31, 2023). The Court held that plaintiffs in Allen I had failed to show that the proposed "liability class" had standing to sue under Article III of the United States Constitution. See id. at *2.

Following this Court's denial of certification of a "liability class," Plaintiff filed the instant individual suit for damages on April 23, 2023. (See Compl.) In his Complaint,

Plaintiff asserts a single claim under 42 U.S.C. § 1983 for deliberate indifference to his medical needs due to DOCCS's implementation of the MWAP Policy and the discontinuation and denial of Plaintiff's medications that ensued. (See id. ¶¶ 340-46.)

Defendants Jacqueline Levitt, Hope Obertean, and Janice Wolf moved to dismiss Plaintiff's Complaint on October 16, 2023, (see dkt. no. 62), as did Defendants Kristin Salotti and David Dinello, (see Motion to Dismiss).[2]  The bulk of each of the motions to dismiss rested on grounds that the statute of limitations barred Plaintiff's claim and that Plaintiff failed to exhaust his administrative remedies before initiating the instant action. (See dkt. nos. 64, 67.)  However, Salotti also argued that Plaintiff had failed to state a plausible claim under 42 U.S.C. § 1983 against her because he had not sufficiently alleged that she was personally involved in the deprivation of his medical care. (See dkt. no. 67 at 7-10.)  Plaintiff initially filed on October 28, 2023, a single brief opposing Salotti's and Dinello's Motion to Dismiss as well as the motion to dismiss filed by Levitt, Obertean, and Wolf.  (See dkt. no. 70.)  Plaintiff's opposition

---

[2] In support of their Motion to Dismiss, Salotti and Dinello also filed a Memorandum of Law in Support thereof, (see dkt. no. 67), and a Reply Memorandum of Law in Support thereof, (see dkt. no. 83).  They have also filed a supplemental letter regarding Plaintiff's failure to oppose Salotti's Rule 12(b)(6) argument in her Motion to Dismiss brief.  (See dkt. no. 89.)

brief made no mention of Salotti's argument that Plaintiff failed to state a claim against her under 42 U.S.C. § 1983.

On November 16, 2023, the Court held a conference in the above-captioned case and in twenty-five other cases related to Allen I (the "Tranche I Cases"). (See dkt. nos. 80, 86-87.) At that time, there were motions to dismiss pending in sixteen of the Tranche I Cases. At the conference, the Court denied as premature the motions to dismiss filed by defendants in the Tranche I Cases that were based solely on the plaintiffs' purported failure to comply with the applicable statute of limitations, including the Defendant Providers' motion to dismiss. (See dkt. no. 86 at 1-2.) The Court left pending the motions to dismiss filed in Tranche I Cases that included arguments made pursuant to Federal Rule of Civil Procedure 12(b)(6) that the plaintiffs had failed to state plausible claims for relief under 42 U.S.C. § 1983. (See id. at 2.) The instant Motion to Dismiss was one such motion. (See id.) The Court also ordered each plaintiff in the Tranche I Cases opposing a motion to dismiss made on 12(b)(6) grounds to file a brief in opposition to any such motion no later than November 29, 2023. (See id.) Plaintiff in the above-captioned case never filed any such opposition. Nevertheless, Defendant Salotti filed a brief letter reply on December 4, 2023. (See dkt. no. 89.)

On March 19, 2024, Defendant Dinello filed an answer to Plaintiff's Complaint, as he had not included in the Motion to

7

Dismiss any argument pursuant to Rule 12(b)(6) that Plaintiff had failed to state a claim against him.  (<u>See</u> dkt. no. 114.)

## II.  <u>Legal Standard</u>

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>In re Actos EndPayor Antitrust Litig.</u>, 848 F.3d 89, 97 (2d Cir. 2017) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.  That "standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Palin v. N.Y. Times Co.</u>, 940 F.3d 804, 810 (2d Cir. 2019) (internal quotations omitted).  Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Iqbal</u>, 556 U.S. at 679.

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."  <u>Palin</u>, 940 F.3d at 809.  The Court is not required, however, "to credit conclusory allegations or legal

conclusions couched as factual allegations." Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020) (quoting Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014)) (ellipsis omitted). "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Rabin, 746 F.3d at 62 (cleaned up).

## III. **Discussion**

Because Plaintiff failed to file any opposition to Salotti's Rule 12(b)(6) argument that he had failed to state a plausible claim against her under 42 U.S.C. § 1983, he has waived his argument and Salotti's Motion to Dismiss is granted.

The Court may properly dismiss a complaint where a plaintiff fails to "discuss [his claims] in his opposition to [the defendant's] motion to dismiss." Gross v. Bell, 585 F.3d 72, 94 (2d Cir. 2009). Indeed, a "'failure to oppose [the] [d]efendant['s] specific argument in a motion to dismiss is deemed waiver of that issue'" raised by the defendant. BYD Co. Ltd. v. VICE Media LLC, 531 F. Supp. 3d 810, 821 (S.D.N.Y. 2021) (emphasis added) (quoting Kao v. British Airways, PLC, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018), aff'd, 2022 WL 598973 (2d Cir. Mar. 1, 2022)); see also Oasis Cap., LLC v. Connexa Sports Techs. Inc., 2023 WL 4304725, at *4 n. 3 (S.D.N.Y. June 30, 2023) ("Failure to oppose an argument effectively waives it." (citing BYD Co. Ltd., 531 F.3d at 821)).

Here, Plaintiff failed to oppose Salotti's 12(b)(6) argument in the initial opposition brief he filed on October 28, 2023. (See dkt. no. 70.)  Then, when the Court extended the time by which Plaintiff and other plaintiffs in the Tranche I Cases—each of whom are represented by the same counsel—could respond to motions to dismiss made on 12(b)(6) grounds, including Salotti's, (see dkt. no. 86 at 2), Plaintiff failed to do so.  The Court concludes that Plaintiff's repeated failure to address Salotti's argument that he has failed to state a plausible claim against her constitutes a waiver and abandonment of his claim.  See BYD Co. Ltd., 531 F.3d at 821; Oasis Cap., LLC, 2023 WL 4304725, at *4 n. 3.  Because Plaintiff has twice abandoned his claim against Salotti, the claim is dismissed.  See Gross, 585 F.3d at 94.

The Court's conclusion is bolstered by the fact that Plaintiff's counsel, who also represents the plaintiffs in the other Tranche I Cases who were given an additional opportunity to address 12(b)(6) arguments in those cases, chose to file timely oppositions to defendants' 12(b)(6) arguments in those cases but not in the instant one.  (See Ortiz v. Dinello, 23-cv-3547, dkt. no. 63; Wilkerson v. Hammer, 23-cv-3397, dkt. no. 63.)  Plaintiff's decision not to oppose Salotti's merits argument for dismissal while the other plaintiffs timely filed such oppositions reveals a conscious choice not to oppose Salotti's Motion to Dismiss.

Even if Plaintiff had not waived his claim against Salotti by failing to file a substantive opposition brief, the Court would still grant Salotti's Motion to Dismiss for failure to state a claim. Plaintiff mentions Salotti only twice in his Complaint—once to identify her as a "Mid-Level clinician" at DOCCS and once to allege that she "tried [to treat] him [with] Topa[m]ax" shortly after DOCCS transferred him from Wende to Five Points "but it did not effectively treat [his] chronic pain," his only substantive allegation regarding Salotti. (See Compl. ¶¶ 27, 323.) This allegation fails to allege plausibly that Salotti was personally involved in a violation of Plaintiff's rights under the Eighth Amendment.

To state a claim under 42 U.S.C. § 1983, a "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

With respect to his claim of deliberate indifference under the Eighth Amendment, that means that Plaintiff must plead that Salotti "violated the Eighth Amendment by [her] own conduct," which requires that he plausibly allege that Salotti herself "'acted with deliberate indifference'—meaning that [she] personally knew of and disregarded an excessive risk to [Plaintiff's] health or safety." Tangreti v. Bachmann, 983 F.3d 609, 619 (2d Cir. 2020) (quoting Vega v. Semple, 963 F.3d 259, 273 (2d Cir. 2020)).

11

Under the Eighth Amendment, which prohibits prisons officials from acting with "deliberate indifference to serious medical needs of prisoners[,]" Estelle v. Gamble, 429 U.S. 97, 104 (1976), a prison official can be held liable for deliberate indifference in violation of the Eighth Amendment only if the plaintiff plausibly alleges both an objective prong and a subjective prong. Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal quotations and citations omitted), abrogated in part on other grounds by Kravitz v. Purcell, 87 F.4th 11 (2d Cir. 2023). The plaintiff must allege that the "the alleged deprivation of adequate medical care [was] 'sufficiently serious'" to satisfy the objective prong. Id. at 279 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

To satisfy the subjective prong, the plaintiff must allege "that the defendant acted with deliberate indifference to [his] medical needs." Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (citing Estelle, 429 U.S. at 104). So doing requires the plaintiff to "show that a particular defendant 'knows of and disregards an excessive risk to inmate health or safety.'" Id. at 164 (quoting Farmer, 511 U.S. at 837). This standard is akin to a mental state of subjective recklessness, as used in criminal law. See Salahuddin, 467 F.3d at 280 (citing Farmer, 511 U.S. at 839-840). The plaintiff may demonstrate the defendant's knowledge either by alleging the official had actual knowledge of the risks to the plaintiff's health or by proving "that the risk was obvious or

12

otherwise must have been known to [the] defendant[.]" Brock, 315 F.3d at 164 (citing Farmer, 511 U.S. at 842).

Plaintiff's lone allegation regarding Salotti is insufficient to satisfy the subjective prong. That he alleges Salotti attempted to treat him with a particular medication shortly after he arrived at Five Points creates no plausible inference that she knew about his prior treatment, the extent of his pain, or any requests he may have made for specific medications. Nor does Plaintiff provide any indication that Salotti was aware that the Topamax she had attempted to treat him with was addressing his pain insufficiently. Without any allegation of this sort, the Court cannot plausibly infer that Salotti was aware of any particular excessive risks to Plaintiff's health that existed at the short time he was housed at Five Points, including any risks that his chronic pain would worsen if she did not prescribe him particular medications or other forms of treatment. Accordingly, because Plaintiff has failed to allege adequately that Salotti personally knew of and disregarded an excessive risk of harm to his health, he has failed to satisfy the subjective prong and to allege that Salotti was personally involved in depriving him of adequate medical care. See Brock, 315 F.3d at 162-64; Tangreti, 983 F.3d at 619.

Therefore, Plaintiff's claim for deliberate indifference against Salotti is dismissed.

13

IV.  **Conclusion**

      Defendant Kristin Salotti's Motion to Dismiss is granted. The Clerk of the Court is directed to close docket entry number 66 and terminate Salotti from the docket in the above-captioned case.

**SO ORDERED.**

Dated:     September 24, 2024
            New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge